# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JODI R. HEINE,

          Plaintiff,

v.                                 Case No. 18-CV-1457

ANDREW M. SAUL[1],
Commissioner of Social Security,

          Defendant.

# DECISION AND ORDER

**1. History**

The Commissioner of Social Security concluded that Jodi R. Heine was not disabled at any time between August 30, 2009 (her alleged onset date) and September 11, 2017 (the date of the Commissioner's decision). His final decision denying Heine's applications for disability insurance benefits and supplemental security income is set forth in an administrative law judge's (ALJ) September 11, 2017 decision (Tr. 12-23), which became the final decision of the Commissioner when the Appeals Council denied review (Tr. 1-3).

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

The ALJ concluded that Heine had the following severe impairments: "s/p gastric bypass and revision; history of ventral hernia; torn labrum; depression; anxiety; sedative dependence and opioid dependence." (Tr. 17.) She had the residual functional capacity (RFC)

> to perform light work … except stand or walk no more than 2 hours in an 8-hour workday; needs a cane to ambulate; jobs that can be performed sitting or standing; never use ladders, scaffolds, and ropes; occasionally use ramps, stairs, stoop, kneel, crouch, or crawl; avoid walking on uneven surfaces; occasionally bend, twist, or turn at the waist; do only simple, unskilled work; no jobs requiring teamwork or work with the public; low stress work and no fast paced work or work where the pace is set by another.

(Tr. 19.)

Although Heine's limitations precluded her from performing her past relevant work, based on testimony from a vocational expert the ALJ concluded Heine was able to work at jobs such as "assembler (DOT# 729.684-054), inspector (DOT# 727.687-062), packager (DOT# 559.687-074), and product processor (DOT# 729.687-014)." (Tr. 23.) Therefore, she was not disabled.

Heine argues that the ALJ committed various errors and asks this court to remand her claim for rehearing.

2. **Standard of Review**

The court's role in reviewing the ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by

2

substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). If the ALJ committed a material error of law, however, the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

### 3. Analysis

In assessing the severity of Heine's symptoms, the ALJ noted that Heine's "physical treatment since the surgeries is limited to pain management—injections and medications—and is conservative at best." (Tr. 21.) In his view, "[t]his supports some ongoing pain but does not suggest physical debilitation." (Tr. 21.) He also relied on Heine's "conservative care" to dismiss the opinion of her treating physician that she would be absent twice per month. (Tr. 21.)

The court cannot say this conclusion is "consistent with and supported by the evidence," as required by SSR 16-3p. There is no evidence that any sort of more aggressive treatment would ever be appropriate for impairments like those Heine suffered as a result of her gastric bypass surgery. Perhaps the treatment Heine received, which the ALJ deemed "conservative," was the most aggressive treatment available for

3

her sort of impairment. Thus, there is no reason to conclude that Heine's prescribed treatment suggested a lack of severity of the underlying impairment.

As to Heine's musculoskeletal impairments, the ALJ overlooked a significant explanation for the lack of further treatment—Heine's "[s]uper morbid obesity." (Tr. 581.) Although physicians disagreed as to whether surgery was appropriate for her conditions (*compare* Tr. 1537 *with* Tr. 1838, 1842;), one stated he would not recommend surgery for Heine's hips unless she lost substantial weight (Tr. 1537; *see also* Tr. 507 (noting "she is very risky for surgery" because of her weight); 625 (noting significant risks from hernia surgery due to her weight).)

The ALJ's failure to explicitly consider Heine's morbid obesity was itself error. Because obesity might impact a claimant's other impairments, an ALJ must consider a claimant's obesity when evaluating the severity of her other impairments. SSR 02-1p (rescinded and superseded by SSR 19-2p, applicable to claims under consideration on or after May 20, 2019); *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016). Although objective medical evidence such as MRIs might support a medical opinion that Heine's impairments were non-debilitating (*see, e.g.*, Tr. 1508-09; 1533; 1537; 1666; 1685; 1836-38), relatively minor physical abnormalities might result in significantly more severe symptoms when combined with obesity. *See Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40."). There is reason to believe that Heine's

obesity exacerbated her impairments, both given the nature of those musculoskeletal impairments and the fact that treatment providers regularly recommended weight loss in conjunction with their treatment recommendations for those impairments. (*See, e.g.*, Tr. 1842.) Consequently, it was error for the ALJ to not explicitly consider Heine's obesity in his assessment of the severity of her impairments. *See* SSR 02-1p.

The ALJ also erred in failing to discuss that Heine had a long history of nausea. (*See, e.g.*, 478, 494, 498, 506, 513, 529, 538, 587, 622, 643, 711, 754, 830, 832, 847, 874, 889, 892, 899, 909, 972, 989, 1036, 1076, 1084, 1115, 1119, 1217,1238, 1361, 1382, 1391, 1403, 1437, 1723; *see also* Tr. 65, 103 (state agency consultants noting Heine's history of nausea).) Heine testified that three to four times per day she suffers bouts of nausea that vary in severity from minor to instances where they might last a couple hours and "involve a lot of retching." (Tr. 46-47.) There are a variety of ways Heine's nausea may have impacted her RFC, including in her potential absences. As noted above, the ALJ dismissed a treating physician's opinion that Heine would be absent roughly twice per month because she "has improved pain with treatment, and the conservative care does not suggest she needs multiple absences." (Tr. 21.) If the ALJ had properly considered and accepted Heine's reports of nausea, that evidence would tend to support the reported absenteeism.

Finally, Heine also argues that the ALJ erred by failing to consider a report from a vocational consultant that Heine submitted following the hearing. The vocational

consultant opined that a person who cannot stand or walk more than two hours in an eight-hour period is limited to sedentary work, rather than light work as the vocational expert stated. (Tr. 426.) The vocational consultant further found that the four jobs identified by the vocational expert—Assembler 729.684-054 (actually sub-assembler); Inspector 727.687-062; Packager 559.687-074; and Product Processing 729.687-014 (actually production helper) (Tr. 51)—were inconsistent with Heine's limitations. (Tr. 426-27.) He explained:

> First of all, that vast majority of jobs in the above DOT categories are considered light, medium, and even heavy, thus requiring standing and walking. Secondly, they tend to be fast paced, often requiring production quotas and piece rate payment schemes. Finally, they typically require reasonably close contact with others, working on assembly lines, particularly with [Assembler] and [Product Processing], as these jobs either assist others, or assemble items for further assembly by others.

(Tr. 427.) In his decision, the ALJ made no mention of the vocational consultant's opinion.

Ordinarily, a plaintiff forfeits any objection to a vocational expert's testimony if she does not raise it at the hearing. *Brown v. Colvin*, 845 F.3d 247, 250 (7th Cir. 2016) (finding plaintiff forfeited claim that "expert failed to provide enough information to justify her departure from the Dictionary of Occupational Titles" "and failed to verify the source of the data on which her jobs-related opinions were based"); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (finding plaintiff forfeited argument that vocational expert should not have relied on Occupational Employment Quarterly

because it is published by a private company); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) (finding plaintiff forfeited challenge to expert's testimony despite the fact there was no evidence in the record of how the expert arrived at this conclusion).

Heine argues that the vocational consultant's opinion is not an objection to the vocational expert's opinion but merely additional evidence. (ECF No. 21 at 2.) The Commissioner argues that, even if it is additional evidence, it was not error for the ALJ to not consider it because it is entirely within the ALJ's discretion whether to accept additional evidence. (ECF No. 20 at 17 (citing *McClesky v. Astrue*, 606 F.3d 351, 355 (7th Cir. 2010).)

The court finds it unnecessary to resolve this question. Because remand is required for independent reasons, this aspect of Heine's claim is effectively moot. On rehearing, the ALJ will be required to consider the evidence in the record, which includes the report of the vocational consultant (Tr. 427).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 8th day of October, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge